# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN FOSTER, | 1:10-cv-01288-AWI-GSA-PC |
| Plaintiff, | <u>SECOND SCREENING ORDER</u> |
| v. | ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND |
| DR. BHAMBI, M.D., et al., | (Doc. 14.) |
| Defendants. | ORDER DENYING REQUEST FOR PRELIMINARY INJUNCTION |
| | THIRTY DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT |

## I. RELEVANT PROCEDURAL HISTORY

Allen Foster ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on July 20, 2010. (Doc. 1.) The Court screened the Complaint pursuant to 28 U.S.C. § 1915A and entered an order on November 30, 2011, dismissing the Complaint for failure to state a claim, with leave to amend. (Doc. 10.) On January 24, 2012, Plaintiff filed an Amended Complaint, which is now before the Court for screening. (Doc. 14.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

1

court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal 129 S.Ct. at 1949. While factual allegations are accepted as true, legal conclusions are not. Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. Id. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

### III. SUMMARY OF AMENDED COMPLAINT

The events at issue allegedly occurred at Pleasant Valley State Prison in Coalinga, California, where Plaintiff is currently incarcerated, and Bakersfield Memorial Hospital. Plaintiff names as defendants Dr. Brij Bhambi (M.D.), an unnamed hospital trainee, and unnamed members of the Bakersfield Memorial Hospital's administration.

Plaintiff alleges as follows. Plaintiff suffers from a heart condition and had stents implanted in 2003. On December 9, 2004, defendant Dr. Bhambi saw Plaintiff for complaints of chest pain and recommended a mechanical revascularization procedure. Plaintiff did not want the procedure and decided he would never see Dr. Bhambi again and would refuse further appointments with him.

Plaintiff has strong beliefs against body implants and only had the stents implanted in 2003 because of his parents' pleas. Plaintiff refused appointments with Dr. Bhambi and did not agree to have procedures done by him.

Plaintiff saw Dr. Ortiz and told the doctor that he did not have heart problems, his chest pains and other discomforts came from pinched nerves, and all appointments for heart procedures should be canceled until Plaintiff advised him otherwise. Plaintiff continued to refuse to see Dr. Bhambi and canceled appointments with him.

Plaintiff later decided to have his old stents and vessels examined by appointment at Bakersfield Memorial Hospital on September 22, 2006. Prison medical staff told Plaintiff that Dr. Bhambi was no longer contracted by the state prison, because of too many inmate complaints. Plaintiff was scheduled for a Left Heart Catheterization (LHC) to check for blockages. While being prepped for the procedure, Plaintiff unknowingly signed a consent form for Emergency Coronary Artery Bypass Graft Surgery (ECABG), which was performed on him. After the surgery, Plaintiff was seen at the hospital by Dr. Bhambi, at which time Plaintiff requested to be released. Back at the prison, Plaintiff complained to doctors about problems with his legs and pain in his groin and testicles.

Plaintiff later discovered that Dr. Bhambi was the doctor who performed the ECABG on him at the hospital, with the assistance of a hospital student trainee, and one of them accidentally struck a nerve during the procedure, affecting Plaintiff's legs and groin. As a result, Plaintiff continues to suffer. Now, one of the stents implanted by Dr. Bhambi and the trainee is 40% closed, and Plaintiff has constant chest pain.

Plaintiff claims that his rights under the First, Eighth, and Fourteenth Amendments were violated when Dr. Bhambi ignored Plaintiff's refusal to be associated with him, when Dr. Bhambi and the trainee implanted new stents which Plaintiff did not want, and when Dr. Bhambi and the hospital administration allowed a student trainee to assist with the procedure without Plaintiff's written consent. Plaintiff agreed to have an LHC performed only to inspect his old stents and vessels, not to implant more stents. Dr. Bhambi changed the procedure and used a hospital trainee to assist him, under the authority given by the hospital administration.

Plaintiff seeks monetary damages and a preliminary injunction to stop Dr. Bhambi from providing public medical services until this case has been concluded.

## IV.  PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

### A.  Defendants Hospital Administrators

Plaintiff names as defendants members of Bakersfield Memorial Hospital's administration, for authorizing the use of a student trainee to assist with Plaintiff's surgery.  Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added).  Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 129 S.Ct. at 1948-49.  Plaintiff must allege some facts indicating that Defendants either personally participated in the alleged deprivation of constitutional rights, knew of the violations and failed to act to prevent them, or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 9th Cir. 1989).

Plaintiff alleges that the hospital administrators gave authority for a hospital trainee to assist with Plaintiff's surgery.  However, Plaintiff has not alleged any facts showing personal participation by any of the individual hospital administrators.  Therefore, Plaintiff fails to state a claim against any of the members of the hospital administration.

4

B.  **Doe Defendants**

Plaintiff seeks to proceed against an unnamed hospital trainee and unnamed members of the hospital administration. Unidentified, or "John Doe" defendants must be named or otherwise identified before service can go forward. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe. For service to be successful, the Marshal must be able to identify and locate defendants.

C.  **Eighth Amendment Medical Claim**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from

which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin, 974 F.2d 1050, overruled on other grounds by WMX Techs., Inc., 104 F.3d at 1136 (en banc) (internal quotations omitted)). "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff has established that he had a serious medical need. However, he has not alleged facts demonstrating that any of the defendants acted with deliberate indifference to a substantial risk of serious harm to Plaintiff. Plaintiff acknowledges in the Amended Complaint that the injury to his nerves by defendants during the heart procedure was accidental, which does not support a claim for deliberate indifference. At most, Plaintiff has stated a claim for negligence, which is not actionable under section 1983.

///

///

**D.     First Amendment**

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974); Clement v. Cal. Dep't of Corr., 364 F.3d 1148, 1151 (9th Cir. 2004); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). A regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see also Beard v. Banks, 548 U.S. 521, 526 (2006). Courts should accord prison officials great deference when analyzing the constitutional validity of prison regulations. See id. at 528-30; Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

In determining whether a prison regulation is reasonably related to a legitimate penological interest, the court should consider the following factors: (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. See Beard, 548 U.S. at 529; Overton, 539 U.S. at 132; Turner, 482 U.S. at 132, Bahrampour v. Lampert, 356 F.3d 969, 975-76 (9th Cir. 2004).

***Freedom of Speech***

The First Amendment prohibits laws abridging freedom of speech. U.S. Const. amend. I. Plaintiff alleges that his rights to free speech were violated because his requests not to be treated by or associated with Dr. Bhambi were ignored. However, Plaintiff has not alleged that any of the defendants prevented or discouraged him from expressing himself or communicating. Therefore, Plaintiff fails to state a claim for violation of his First Amendment rights to free speech.

***Free Exercise of Religion***

The First Amendment provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "Under the Constitution,

'reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments.'" Pierce v. County of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008) (quoting Cruz v. Beto, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079 (1972) (addressing the rights of convicted prisoners)).

"In order to establish a free exercise violation, [a prisoner] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" Id. at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987)); also see Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (religious belief must be "sincerely held" and "rooted in religious belief").

Plaintiff claims that defendants violated his rights to freely exercise his religion when they allowed a medical procedure to be performed on him which he had clearly refused. However, Plaintiff has not alleged that defendants knowingly interfered substantially with any doctrine mandated by a religious faith practiced by Plaintiff. Therefore, Plaintiff fails to state a claim for violation of his First Amendment rights to freely exercise his religious beliefs.

### *Freedom of Association*

The First Amendment prohibits laws abridging "the right of the people peaceably to assemble." U.S. Const. amend. I. Plaintiff alleges that his right to association was violated when he was forced to be treated by Dr. Bhambi against his wishes. While the Supreme Court has held that freedom of association plainly presupposes a freedom not to associate, Roberts v. United States Jaycees, 468 U.S. 609, 622, 104 S.Ct. 3244, 3252 (1984), Plaintiff's allegations that he was forced to associate with Dr. Bhambi do not support a First Amendment claim. An inmate's choice of a physician for medical care is not the kind of highly personal bond, cultivating and transmitting shared ideals and beliefs, protected from interference by the First Amendment's freedom of association. See id. at 618-619. Moreover, Plaintiff has not alleged facts showing that Dr. Bhambi

knew that Plaintiff was cancelling appointments because Plaintiff disagreed with Dr. Bhambi's treatment and was avoiding any association with him. Therefore, Plaintiff fails to state a claim for violation of his rights to association under the First Amendment.

### E. Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. "[S]ubstantive due process rights do not extend to the choice of type of treatment or of a particular health care provider." National Ass'n for Advancement of Psychoanalysis v. California Bd. Of Psychology, 228 F.3d 1043, 1050 (9th Cir. 2000).

A random, unauthorized deprivation of a protected interest, whether negligently or intentionally done, does not violate due process as long as the state furnishes an adequate post-deprivation remedy. Parratt v. Taylor, 451 U.S. 527, 541, 101 S. Ct. 1908 (1981). California law provides an adequate post-deprivation remedy for a tort claim based on uninformed consent. See Cal. Gov't Code §§ 810-895. California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d 534, 543 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort

Claims Act. State v. Superior Court, 32 Cal.4th at 1245, 90 P.3d at 124, 13 Cal.Rptr.3d at 543; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff alleges that he was forced to submit to a medical procedure he did not want, performed by a doctor and hospital trainee he did not approve of. Plaintiff claims that he was not given sufficient information to exercise his rights to refuse unwanted medical treatment or to know who would be performing the procedure. Plaintiff alleges that Dr. Bhambi changed the medical procedure that Plaintiff was scheduled to undergo, without Plaintiff's knowledge. Plaintiff alleges that he unknowingly signed a consent form for the surgery which was performed on him.

To the extent that Plaintiff alleges that Dr. Bhambi intentionally failed to provide him with informed consent, without authority, Plaintiff's remedy would be found under California law. Plaintiff fails to show compliance with the California Tort Claims Act, and therefore such claim is not cognizable under federal or state law.

To the extent that Plaintiff alleges that the hospital's administrators promulgated or implemented a policy allowing for uninformed consent, Plaintiff has not alleged any personal acts by individual hospital administrators linked to the violation of his constitutional rights. As stated above, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added). To succeed on such a claim, Plaintiff must name the individual defendants and demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 129 S.Ct. at 1948-49.

Plaintiff has not alleged facts showing he was deprived of a constitutionally protected liberty interest by any of the defendants. Therefore, Plaintiff fails to state a claim for violation of due process.

### F.  Request for Preliminary Injunction

Plaintiff requests preliminary injunctive relief via a court order to stop Dr. Bhambi from providing public medical services until this case has been concluded.

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions

until the merits of the action are ultimately determined. University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). A preliminary injunction is available to a plaintiff who "demonstrates either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship tips in its favor." Arcamuzi v. Continental Air Lines, Inc., 819 F. 2d 935, 937 (9th Cir. 1987). Under either approach the plaintiff "must demonstrate a significant threat of irreparable injury." Id. Also, an injunction should not issue if the plaintiff "shows no chance of success on the merits." Id. At a bare minimum, the plaintiff "must demonstrate a fair chance of success of the merits, or questions serious enough to require litigation." Id.

Federal courts are courts of limited jurisdiction, and as a preliminary matter, the court must have before it an actual case or controversy. City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 757-58 (1982); Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006). If the court does not have an actual case or controversy before it, it has no power to hear the matter in question. Id. Thus, "[a] federal court may issue an injunction [only] if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." Zepeda v. United States Immigration Service, 753 F.2d 719, 727 (9th Cir. 1985).

By this order, the Court shall dismiss Plaintiff's Amended Complaint for failure to state a claim. Plaintiff shall be granted leave to file a Second Amended Complaint within thirty days. Therefore, at this juncture, the Court does not yet have before it an actual case or controversy, nor does the court have jurisdiction over any of the defendants in this action, and Plaintiff's request for a preliminary injunction shall be denied.

### V.    CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Plaintiff's Amended Complaint fails to state any claims upon which relief can be granted under § 1983 against any of the Defendants. In this action, the Court previously granted Plaintiff an opportunity to amend the complaint, with ample guidance by the Court. Plaintiff filed an Amended Complaint adding new claims and a new

defendant, but he fails to state a claim upon which relief may be granted. Plaintiff has now filed two complaints without alleging facts against any of the Defendants which state a claim under § 1983. In this order, the Court has provided Plaintiff with legal standards relating to his new claims and defendant, and for this reason Plaintiff shall be granted one more opportunity to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires."

Accordingly, this action shall be dismissed, with leave to amend. Within thirty days, Plaintiff shall file a Second Amended Complaint, curing the deficiencies identified in this order. Plaintiff must demonstrate in the amended complaint how the conditions complained of resulted in a deprivation of his constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555); Moss, 572 F.3d at 969. The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969. Plaintiff must also demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants relating to issues arising after July 20, 2010. In addition, Plaintiff should take care to include only those claims that have been exhausted prior to the initiation of this suit on July 20, 2010.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The Second Amended Complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

///

Based on the foregoing, THE COURT HEREBY ORDERS that:

1. The Amended Complaint is DISMISSED for failure to state a claim, with leave to amend;
2. Plaintiff's request for a preliminary injunction is DENIED;
3. Within thirty days of the date of service of this order, Plaintiff shall file a Second Amended Complaint, curing the deficiencies identified by the Court in this order;
4. The Second Amended Complaint should be clearly and boldly titled "Second Amended Complaint," refer to case number 1:10-cv-01288-AWI-GSA-PC, and be an original signed under penalty of perjury;
5. The Clerk of the Court shall send to Plaintiff one civil rights complaint form; and
6. Plaintiff's failure to comply with this order shall result in the dismissal of this action in its entirety for failure to state a claim.

IT IS SO ORDERED.

Dated:   **June 4, 2012**         /s/ **Gary S. Austin**
                                 UNITED STATES MAGISTRATE JUDGE